UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Jennifer Pancratz | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Edward Trent

Jason Wojciechowski
Buddy Gottlieb
Molly Lens

**Proceedings:** MOTION TO DIMISS (Dkt. 29, filed on March 19, 2025)

**I. INTRODUCTION**

On January 17, 2025, Plaintiff Ruben D. Sanchez Jr. ("Sanchez") filed his complaint against defendants United Airlines, Inc. ("United") and the Association of Flight Attendants-Communications Workers of America (the "Union"). In Sanchez's original complaint, he alleges four claims for relief. Dkt. 1 ("Compl."). In his complaint, Sanchez alleges the following: (1) wrongful discharge pursuant to California Labor Code § 1101 *et seq.*, against United; (2) wrongful discharge and failure to hire pursuant to California Labor Code § 98.6, against United; (3) breach of contract, against United; and (4) breach of duty of fair representation, against the Union. Dkt. 1. On February 7, 2025, Sanchez filed his First Amended Complaint. Dkt. 22 ("FAC"). In his FAC, he added three additional claims for relief. Id. Sanchez now alleges the following claims: (1) wrongful discharge pursuant to California Labor Code § 1101 *et seq.*, against United; (2) wrongful discharge pursuant to California Labor Code § 98.6, against United; (3) age discrimination pursuant to the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, against United; (4) religious discrimination pursuant to FEHA, California Government Code § 12940, against United; (5) breach of contract, against United; (6) breach of duty of fair representation, against the Union; and (7) age and religious discrimination pursuant to FEHA, California Government Code § 12940, against the Union. FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

On March 19, 2025, the Union filed the instant motion to dismiss. Dkt. 29 ("Mot."). On June 9, 2025, Sanchez filed his opposition. Dkt. 40 ("Opp."). On June 16, 2025, the Union filed its reply. Dkt. 42 ("Reply").

On June 30, 2025, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. Compl. ¶ 1. Sanchez claims that he has been employed as a flight attendant by United since 1996. Id. ¶ 20.

Sanchez alleges that on May 30, 2023, he worked United flight 1786, a red-eye flight from Los Angeles to Cleveland, where he had a private conversation with a fellow flight attendant about Catholic theology and church teachings on marriage and sexuality. Id. ¶ 21-23. Sanchez claims that on June 3, 2023, an individual, self-identified as Danny Bottom ("Bottom"), using the X handle @papichicago contacted United to complain that Sanchez "openly hates black people and is anti-trans" based on comments allegedly made during the flight. Id. ¶ 24. Sanchez alleges that this individual was not a passenger on the flight in question and had previously harassed him. Id. ¶¶ 25-26.

Sanchez alleges that United placed him on paid leave on June 10, 2023, to investigate the complaint, which was eventually used as "a pretext" for examining his personal X account. Id. ¶¶ 27-28. He claims that he was placed on leave despite no previous complaints about his posts for the past decade nor complaints about his treatment of co-workers or customers. Id. ¶ 27.

Sanchez claims that by June 14, 2023, United had interviewed the three other flight attendants on the flight, all of whom allegedly refuted Bottom's allegations. Id. ¶ 29. He alleges that during a June 16, 2023, meeting scheduled by United to discuss the allegations, he denied making racial comments and explained that his conversation with his coworker involved discussion of church teachings on marriage and gender, noting that he agrees with Catholic doctrine. Id. ¶ 30. Sanchez further claims that this conversation was not conducted in front of any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

passengers and that no passengers complained about it. Id. He alleges that United's investigator, Jordan Rayburg, "reacted negatively when Sanchez explained the religious basis for his beliefs" and that his Union representative provided no support in this conversation. Id. ¶ 31.

Sanchez claims that United's CEO, Scott Kirby, has previously been under scrutiny for "discrimination against employees of faith," and that "United has a history of targeting older flight attendants to terminate them for minor violations." Id. ¶¶ 32-33. Sanchez also claims that the allegation that United "favors younger flight attendants," is supported by a United training program called "Backstage 2019" where it was announced that the airline "was going to focus on attracting millennial travelers and use flight attendants under 40 in its advertisements." Id. ¶ 33.

Sanchez alleges that after the original complaint proved unfounded, United expanded its investigation to examine his entire social media to substantiate the termination, "due at least in part to United's objection to Sanchez's religious beliefs, age, and/or political expression." Id. ¶ 35. He claims that United pointed to a de minimis percentage of his posts (allegedly 0.02%), which he alleged expressed his personal political views and religious beliefs unrelated to his work for United, though it accused him of "lacking dignity, respect, professionalism, and responsibility." Id. ¶ 37. Sanchez further claims that several high-level United personnel had followed his social media for many years and had never reported an issue. Id. ¶ 38.

Sanchez claims that United's social medial policy covers employee social media participation both on and off the job but extends only to "the way people feel about flying [United]" and how "an employee's social media 'can positively impact the experience customers have with our brand.'" Id. ¶ 39 (quoting United Airlines, *Working Together Guidelines* 21 (Oct. 2023) (social media sec. dated Apr. 2023), available at https://tinyurl.com/bfu4e7za.). He alleges that the policy encourages employees to use social media and share their experiences with the company. Id. ¶ 40.

Sanchez alleges that United identified three of his social media posts in the investigation, all of which did not reference United or his employment, and that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

while United's policy includes various guidelines, most were unrelated to the posts it focused on during the investigation. Id. ¶¶ 41-42. According to Sanchez, the policy requires that a post have a direct impact on United's employees or customers to constitute a violation and United did not provide any evidence that his off-duty, personal posts had such an effect. Id. Sanchez sets forth portions of United's social media policy, including that:

> Generally, United does not actively monitor employees' personal social media accounts. However, there may be occasions where an employee's personal social media activity may be viewed by individuals at United and their identity determined if the post is without a name or under a false name. If United is made aware of content on social media involving an employee that potentially violates these standards, we have the right to investigate and take appropriate action. We will take into account many factors, including but not limited to the type of posting, audience, impact to the brand and our corporate reputation and any previous counseling or coaching. Appropriate action can be anything from asking you to remove a certain post in minor cases to termination in cases of significant misjudgment.

Id. ¶¶ 43-44 (quoting United Airlines, *Working Together Guidelines* 21).

Sanchez claims that he uses the social media platform X, formerly Twitter, to share his personal, religious, and political views and that because the platform allows users to post content, and follow and communicate with other users, it is a "vehicle" for the exercise of constitutional freedoms. Id. ¶¶ 45-47.

Sanchez alleges that X has not restricted or removed any of his posts, including those that are the subject of this case, and acknowledges that he is solely responsible for the content he shares. Id. ¶ 47. He further alleges that United interpreted its social media policies in an overly broad manner to exert control over his online speech, a violation of state law and his rights under the Collective Bargaining Agreement ("CBA"). Id. ¶ 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

Sanchez alleges that his X profile header identifies it as his "Personal Account" and lists his military affiliations but makes no reference to United, as he never purported to speak on United's behalf. Id. ¶ 49. He alleges that United justified his termination by stating that a "'review of your Twitter account found multiple posts promoting the Company which includes one of you in your flight attendant uniform.'" Id. ¶ 50. Sanchez claims that this rationale contradicts United's request for employees to share their experience on social media and that none of his posts violate United's policies. Id.

Sanchez alleges that United identified two posts where he reposted articles about United and a post including a photo of him with a pilot to suggest a "nexus" between his X account and his job, but did not raise any specific concerns about the photo's content.[1] Id. ¶ 52.

Sanchez alleges that United accused him of racism based on his reposting of content by former baseball player Aubrey Huff that contained a video of a fight with commentary about "worthless people" but no racial reference. Id. ¶ 53. He claims that United also criticized a comment he made about Michelle Obama on another user's post and including comments from unrelated users when presenting the post. Id. ¶ 54. Sanchez claims that "[a]t no time did [he] express or 'endorse[] hostility towards the black community' as he was accused of by United." Id. ¶ 55. He alleges that United accused him of attacking the transgender community because he reposted content from other gay men expressing the political opinion that the transgender movement is distinct from and does not further the "LGB" movement. Id. ¶¶ 56-57.

Sanchez alleges that United also noted his account "contains content that reflects negatively on people of size." Id. ¶ 59. He claims that he reposted "commentary about obesity and overweight problem in the United States," which he characterizes as an issue of current political relevance. Id. ¶ 60. Sanchez claims that one of his posts, in which he states that addressing weight-related issues in the United States is motivated by concern and a desire for positive change, is contrary

---

[1] The Court notes that Sanchez has included screenshots from his X account in his FAC. The Court does not set forth the content of the posts but refers to them generally here and includes Sanchez's description thereof.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

to United's claim of hostility. Id. ¶ 61. Sanchez further alleges that in another repost, he shared commentary about airline policies—referencing United's policy among others—that require certain passengers to purchase an additional seat, which according to him is an example illustrating that offering criticism or expressing disagreement does not necessarily equate to discrimination. Id. ¶ 62.

Sanchez claims that United reviewed several social media posts during its initial investigation that were not ultimately cited in his termination letter, indicating that United was broadly searching for a basis to terminate his employment. Id. ¶ 63. Sanchez further alleges that United did not consider the original complaint when deciding to terminate him, rather his termination was based solely on personal social media activity, which he argues was unrelated to his job performance as defined by the CBA. Id.

Sanchez also alleges that his initial 30-day suspension was extended due to his required military service leave and that when he returned to United in November 2023, he was reassigned to United's Los Angeles hub, placed on paid leave, and not allowed to fly. Id. ¶¶ 64-65. On January 8, 2024, Sanchez claims that he met with United and was informed of his termination, which was later confirmed by letter on January 10, 2024. Id. ¶ 66. He alleges that this investigation and firing decision was made with the "knowledge and approval" of those qualifying as "an officer, director, or managing agent" of United. Id. ¶ 67.

Sanchez claims that United flight attendants are represented by the Union under the current CBA, pursuant to which, "'[a] Flight Attendant who has passed the probationary period shall not be disciplined or discharged without just cause.'" Id. ¶¶ 68-69 (quoting CBA Sec. 23.A.8 (p. 194)). He further alleges that under the CBA, United and the Union recognize the value of a diverse workforce and are committed to a workplace free of discrimination. Id. ¶ 70. Additionally, under the CBA, Sanchez alleges, flight attendants cannot be disciplined or discharged without just cause and are entitled to Union representation during investigations that could lead to disciplinary action or discharge. Id. ¶ 71. Sanchez claims that a flight attendant must be "notified in writing of the precise charge or charges being investigated" before an investigation, and that upon being discharged or disciplined, a flight attendant has thirty days to file a grievance to dispute the decision. Id. ¶¶ 72-73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

Sanchez claims that the Union did not properly defend him during the June 16, 2023, meeting.  Id. ¶ 74.  He claims that the Union initially defended him through Steps 1 and 2 of the grievance process and that during Step 2, the Union representative informed him that he "'didn't say anything bad'" and that United was "'overreacting.'"  Id. ¶¶ 74-75.  According to Sanchez, the Union then "abruptly changed course" and dropped his representation for arbitration, stating it would wait for the results of another social media-related arbitration case.  Id. ¶¶ 75-76.  Sanchez claims that the Union did not evaluate the claims at issue nor provide an individual assessment of his case before making this decision, thus failing to abide by Supreme Court precedent that requires the merits of each individual grievance to be evaluated.  Id. ¶ 77.

Sanchez alleges that the Union's decision not to pursue his arbitration was "arbitrary and in bad faith" because there was a basis to challenge the policy pursuant to an August 2023 National Labor Relations Board decision and because United's alleged history of discrimination and negative reaction to his beliefs in the June 16, 2023, meeting justified taking his claims to arbitration.  Id. ¶ 78.  He claims that his termination was a violation of the CBA because the X posts in question were unrelated to United, which was noted by the Union representative during the Step 2 process.  Id.

Sanchez also alleges that the Union told him in August 2024 that he could continue with arbitration if he raised the Union's half of the costs and hired his own attorney, but the Union would not represent him.  Id. ¶ 79.  He alleges that he was unable to raise sufficient funds, and on October 17, 2024, the Union withdrew his grievance.  Id. ¶ 80.  Sanchez alleges that the Union has failed to support employees who observe religious practices on other occasions, including in 2022, when two flight attendants sued the Union over their lack of support in questioning "Alaska Airlines' support for the 2021 Equality Act, a proposal that would have added LGBTQ protections to federal civil-rights law."  Id. ¶ 82.  Sanchez claims that the Master Executive Council of the Union reported their comments to company officials rather than provide support.  Id. ¶ 83.

Sanchez alleges that United treated other employees differently for similar or more serious social media conduct, including that United offered other employees the chance to remove "offending" posts, but did not provide him with this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

opportunity. Id. ¶ 85. He further claims that other employees' posts that violated the social media policy did not result in termination. Id. Sanchez alleges that a United flight attendant publicly insulted customers on Twitter, calling them "drunks" who "drink like camels," while her profile featured photos of her in United uniform. Id. ¶¶ 87-88. He claims that a United spokesperson's response to this was "'[t]his is a flight attendant's personal Twitter account. However, our expectation is that our flight attendants will treat our customers with respect whether that is inflight or online. We are reviewing the other concerns expressed.'" Id. ¶ 89. Sanchez claims that United pilot Ibrahim Mossallam posted on Facebook praising Hamas's October 7th terrorist attacks as "brave" and was suspended with pay but returned to flying after approximately one month. Id. ¶¶ 90-93. He also alleges that United flight attendant Alexa Wawrzenski created social media accounts featuring herself in uniform with links to adult content and was given an opportunity to delete problematic photos before termination, unlike Sanchez. Id. ¶¶ 94-96.

### III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**IV.   DISCUSSION**

    **A.   Preemption of FEHA**

The Union argues that its alleged wrongdoing in this matter, that it declined to take Sanchez's case to arbitration under its CBA with United is "squarely the type of claim that must be judged under the federal duty of fair representation standard." Mot. at 3. The Union contends this is the case because the duty of fair

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

representation arises by implication from the right of exclusive representation pursuant to the Railway Labor Act and displaces state law seeking to regulate union duties in the context of representation of covered employees. Id. The Union argues that though the Ninth Circuit has not addressed whether Adkins v. Mireles, 526 F.3d 531 (9th Cir. 2008), a case on preemption, is relevant to FEHA claims, other district court decisions have found equivalent state laws preempted based on Adkins. Id. at 4. The Union argues that because Sanchez is asserting that the Union discriminated against him during their representation throughout his termination proceedings, "his state law claim alleging discrimination in its representation is subsumed under the duty of fair representation." Id. at 4-5. The Union further contends that in Hardine v. Office & Professional Employees, 475 F. App'x 103 (9th Cir. 2012), the Ninth Circuit affirmed a finding that FEHA was preempted by the Labor-Management Relations Act, 29 U.S.C. § 185 because it was inextricably intertwined with the consideration of the terms of the labor contract. Id. at 6. There, the Union argues, the Ninth Circuit noted that the claim at issue was based on the union's performance of its representative functions, rendering preemption appropriate, and citing Adkins. Id. The Union argues that based on this case, it appears that the Ninth Circuit would apply Adkins to a FEHA claims "where the allegations show that the claim is about the union's alleged failures as an exclusive representative, not in some other context." Id.

In opposition, Sanchez argues that the argument that his FEHA claim is a "repackaged breach of [his] duty of fair representation claim and thus preempted" is incorrect. Opp. at 3. Sanchez contends that the Ninth Circuit is clear that state law claims that are not based upon a collective bargaining agreement or dependent on the interpretation thereof are not preempted. Id. (citing Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993)). Sanchez argues that the Ninth Circuit has made clear that preemption does not apply in the context of FEHA. Id. at 4. Sanchez argues that Adkins, as well as the other authority on which he relies, "clearly established that a discrimination claim under FEHA is independent of a claim for breach of duty of fair representation." Id. at 5. Sanchez argues that because the duty not to discriminate arises out of FEHA, rather than the collective bargaining agreement, it is not preempted by the duty of fair representation. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

In reply, the Union argues that Sanchez's preemption arguments are flawed and that the FAC and opposition demonstrate that Sanchez complains only about the normal incidents of the union-employee relationship. Id. at 1-6.

The Court concludes that Sanchez's FEHA claim is not preempted by his duty of fair representation claim. Though the Ninth Circuit has not addressed this specific issue, it has held that complete preemption is inappropriate for claims arising out of the RLA. Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1246 (9th Cir. 2009). The Union argues that Sanchez's FEHA claim is really a duty of representation claim masquerading as a FEHA claim and "as such would normally require recharacterization as a duty of fair representation claim." Mot. at 8. However, here, the Union seeks dismissal because recharacterization would result in duplicative claims. Id. To the extent that the Union seeks complete preemption, as indicated by the contention that the claim should be recharacterized, the Court concludes that complete preemption is not appropriate for claims arising out of the RLA or the duty of representation arising therefrom.

Even if the Union sought defensive preemption, and accordingly dismissal of the FEHA claim on that basis, the Court finds that preemption is not appropriate here. In Adkins, the Ninth Circuit explained that,

> [t]he federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative .... To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship. Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining representative ....

Adkins, at 539-40.

In Hardine, which the Union argues demonstrates that preemption is appropriate, the Ninth Circuit, in a memorandum disposition, found that the LMRA preempted the state law claim because it was "'inextricably intertwined with consideration of the terms of the labor contract.'" Hardine, 475 F. App'x at 105 (quoting Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)). The Ninth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

Circuit explained that in plaintiff's complaint she has claimed that her union "failed and refused to fairly, properly, fully, adequately or accurately provide her with quality representation in her claims against her employer." Id. (internal citations omitted). Because she sought to enforce duties owed in defendants' capacity as union representatives, that is the duty to represent her in good faith, the claim was directly founded on the rights established by her collective bargaining agreement. Id. The Ninth Circuit does therein describe the duty of fair representation as "a duty arising from the CBA and imposed on the union." Id.

　　　Here, the duty of fair representation arises from the RLA, which the Ninth Circuit has established does not give rise to complete preemption as the LMRA does for claims arising out of the collective bargaining agreement. Additionally, under the RLA, the Supreme Court has determined that RLA preemption is limited to contexts in which a state law claim is dependent on the interpretation of a collective bargaining agreement. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 262 (1994).

　　　The Court determines that even if the duty of fair representation is considered to arise from the collective bargaining agreement and to be based on allegations of discrimination in this case, the state law FEHA claim for discrimination is not dependent on the interpretation of the collective bargaining agreement. Indeed, as the Ninth Circuit explained in Adkins, a claim is not preempted if the duties "derive from sources other than the union's status as its member's exclusive collective bargaining representative …." Adkins, 526 F.3d at 540. Here, even though the duty of fair representation includes an obligation not to discriminate, FEHA independently gives rise to an obligation not to discriminate and thus the duty underlying the FEHA claim does derive from a source other than the Union's status as its collective bargaining representative. See Padilla v. Pac. Bell Tel. Co., No. 14-cv-09760-DDP-JPRx, 2015 WL 728695, at *5 (C.D. Cal. Feb. 19, 2015). Accordingly, the Court concludes that Sanchez's FEHA claim is not preempted by the duty of fair representation claim.

　　**B.　Punitive Damages Claim**

　　　The Union argues that, due to preemption, the FAC alleges only a duty of fair representation claim, for which punitive damages are unavailable. Mot. at 8. The Union argues that the punitive damages demand against it should be stricken

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

pursuant to Rule 12(f). Id. In opposition, Sanchez argues that the Union does not dispute that he is entitled to request punitive damages under FEHA. Opp. at 11. Because the Court concludes that the FEHA claim is not preempted, the Court finds that Sanchez may maintain his claim for punitive damages pursuant to FEHA.

    **C.**    **Duty of Fair Representation Claim**

    The Union contends that Sanchez does not state a claim "under the well-established and deferential duty of fair representation standard." Mot. at 9. The Union argues that courts are deferential to a union's decisions and will not "second-guess them as long as they are not 'arbitrary, discriminatory or in bad faith.'" Id. (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). The Union argues that the duty of fair representation should thus be narrowly construed. Id. Further, the Union argues that "[d]iscretionary conduct and decision-making are inherently not arbitrary." Id. The Union argues that a union's conduct is only properly considered arbitrary if it lacks a rational basis. Id. at 10. The Union argues that to demonstrate bad faith, a plaintiff must make plausible allegations with "'substantial evidence of fraud, deceitful action or dishonest conduct.'" Id. (quoting Humphrey v. Moore, 375 U.S. 335, 348 (1964)) In order to plead discrimination, the Union argues, a plaintiff must set forth substantial evidence of intentional, severe discrimination, which is not related to legitimate union objectives. Id.

    First, the Union argues that the FAC does not state a claim related to the June 16, 2023 investigatory meeting with United. Id. at 11. The Union argues that Sanchez's "failure to plead that absent the Union's alleged errors he would have achieved a better outcome is itself fatal to his duty of fair representation claim." Id. The Union contends it is insufficient for liability to claim that the representation does not meet a plaintiff's expectations. Id. The Union argues that Sanchez is incorrect to argue that it treated him "'differently than similarly situated younger co-workers and/or those who do not share his religious beliefs.'" Id. at 12 (citing FAC ¶ 163). Finally, the Union argues, Sanchez does not make any allegations that could raise a claim of bad faith conduct. Id. The Union argues that Sanchez's claim is not plausible. Id.

    Second, the Union argues that the FAC fails to state a claim for breach of duty of representation based on the Union declining to take Sanchez's case to arbitration. Id. at 13. The Union argues that Sanchez's own allegations make clear

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

that the Union exercised judgment in declining to take his case to arbitration, and Sanchez's contention that the judgment was wrong does not render the decision arbitrary. Id. Additionally, the Union argues, Sanchez fails to allege facts relating to the discrimination prong because "there are no allegations of fact from which it could be plausibly concluded that the Union bore or was motivated by animus toward [Sanchez] on the basis of his religion and/or age." Id. The Union argues that Sanchez's contention that representation was not dropped for younger union members and those who do not share his religious beliefs does not raise a plausible claim for relief because there are many reasons a union may choose to drop or maintain a claim. Id. at 14. The Union contends that because Sanchez acknowledges that the Union deliberated as to the merits of his grievance and gave a rational basis for choosing not to pursue it, he cannot plausibly claim a breach of the Union's duty. Id. The Union argues that it does not breach its duty by taking action that one member disagrees with, nor does it breach its duty if its judgment is ultimately wrong, nor if it is negligent. Id. at 14-15. Again, the Union argues there is no showing of bad faith in this case. Id. at 14.

In opposition, Sanchez argues that he has pled sufficient facts to support his breach of duty of fair representation claim. Opp. at 9. Sanchez contends that the Union ignores that "it did not exercise any discretion on the individualized basis required by Supreme Court precedent and its decision was arbitrary, discriminatory and/or in bad faith …." Id. Sanchez contends that his allegations of arbitrary conduct suffice as he alleged that the Union initially defended him, and dropped his case for unreasonable and arbitrary reasons, despite telling him that he was entitled to his opinion, was not speaking about an employee or customer, and that United was overreacting. Id. at 10. Sanchez argues that the Union declining to take his case to arbitration based on lack of success with unrelated social media claims demonstrates that "the Union ignored clear and meritorious defenses to United's termination decision without any explanation or even consideration of those defenses." Id. Sanchez argues that he also pled bad faith because he alleged that the Union had a basis to challenge the United social media policy and "had a strong argument to extend NLRB decisions into the RLA space." Id. at 11. Additionally, Sanchez argues that there were examples of disparate application of United's policy which justified taking the grievance to arbitration. Id. Finally, Sanchez argues that he has sufficiently alleged that the Union has a history of failing to support religiously observant employees. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

In reply, the Union argues that Sanchez fails to plead a breach of the duty of fair representation because he points only to reasons the Union could have proceeded to arbitration, rather than reasons why it was arbitrary, discriminatory, or in bad faith to choose not to do so. Reply at 7. The Union argues that Sanchez cites no applicable law for his proposition that his grievance must be considered on an individualized basis and argues that this allegation does not give rise to a conclusion that the decision to decline to arbitrate was arbitrary. Id.

As to discrimination, the Union argues, Sanchez indicates that he has pled a claim at paragraphs 81 and 82 of the FAC, asserting that the Union has been sued for religious discrimination by other plaintiffs. Id. at 9. Though Sanchez claims in opposition that the Union fails to dispute that it did not support other religious employees, the Union argues that it did and that it has in the instant case pointed out an absence of allegations suggesting any Union animus toward Sanchez on the basis of religion. Id. The Union last argues that Sanchez's argument regarding bad faith points to a conclusory allegation in his FAC that the Union acted in bad faith and reiterates that he disagrees with how the Union handled his grievances. Id. Such allegations, the Union argues, do not support bad faith. Id.

To establish a breach of a union's duty of fair representation, an employee must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190. Though a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," the Supreme Court did not "agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." Id. at 191. Pursuant to the duty of fair representation, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." Air Line Pilots Ass'n, Intern. V. O'Neill, 499 U.S. 65, 67 (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)); see also Robesky v. Qantas Empire Airways Ltd., 573 F.2d 1082, 1089 (9th Cir. 1978). The Supreme Court has said that to "ignore a meritorious grievance or process it in a perfunctory fashion" may be arbitrary. Vaca, 386 U.S. at 191.

The Court concludes that Sanchez states a claim for breach of duty of fair representation. At minimum, he has sufficiently alleged a breach based on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

theory that Union acted arbitrarily.² The Ninth Circuit has established that "a union's conduct generally is not arbitrary when the union exercises its judgment." Demetris v. Transp. Workers Union of Am., AFL-CIO, 862 F.3d 799, 805 (9th Cir. 2017). Here, however, Sanchez alleges that the Union failed to exercise judgment and processed his grievance in a perfunctory fashion, which the Supreme Court deemed to be a violation in Vaca. Vaca, 386 U.S. at 191. The Court notes that the standard is forgiving and a union's judgments are entitled to deference even when ultimately wrong. Beck v. United Food & Com. Workers Union, Loc. 99, 506 F.3d 874, 879 (9th Cir. 2007). The Court finds nonetheless that, given it must take Sanchez's allegation as true on a motion to dismiss, Sanchez has sufficiently pled that judgment was not used in determining whether his claim should be pursued. Sanchez alleges that "[a]t no point did the Union provide Sanchez with any evaluation of his claims or suggest that an individualized assessment of Sanchez's case factored into its decision." FAC ¶ 76. Sanchez alleges that the Union's decision was based only on the possible outcome of another social media related case. Id. The Court finds that these allegations suffice to state a claim that the Union did not decide on more than a perfunctory basis that his claim was not viable. Accordingly, the Union's motion to dismiss the duty of fair representation claim is denied.

### D. FEHA Claim

The Union argues that even if Sanchez's FEHA claim is not preempted, the FAC does not give rise to a plausible claim that the Union acted with animus based on Sanchez's religion or age. Mot. at 15-16. The Union argues that Sanchez's contention that he was treated differently from younger coworkers or those who do not share his religious beliefs is conclusory and should not survive a Rule 12(b)(6) motion. Id. at 15. The Union argues that there are "no allegations of fact reflecting the Union's religious or age-based animus, so there is no basis for maintenance of a FEHA claim against the Union," and thus, even if not preempted by the duty of fair representation, Sanchez's FEHA claim should be dismissed. Id. at 16.

---

² Because the Court finds that Sanchez has stated a claim based on arbitrariness, it does not address discrimination or bad faith.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

In opposition, Sanchez argues that his allegations support a FEHA violation. Opp. at 8. Sanchez argues that the Union mischaracterizes his FAC by stating that his reference to younger co-workers and those who do not share his religious beliefs is conclusory because he also provided three specific examples of United flight attendants who did not face discipline for social media posts. Id. Because these individuals were likely Union members, Sanchez argues that the allegations demonstrate that the Union "should have known that United was overreacting or acting with pretext," and that the "Union nevertheless treated [him] differently than his coworkers." Id. Sanchez contends that "referencing categories of comparators is 'sufficiently clear' at the pleading stage to satisfy Rule 12(b)(6)." Id. at 9. Sanchez argues that his allegations suffice as he pled that he was treated differently from his coworkers who were younger and/or who did not share his religious beliefs; the differential treatment was because of his age and religious beliefs; and the Union disapproved of his religious beliefs and had a history of discriminating against employees on that basis. Id.

In reply, the Union argues that Sanchez is wrong to contend that his claim is supported by the other cases to which he refers as they are either not analogous to the instant situation or, where analogous, are consistent with the outcome here. Id. at 11. The Union argues that Sanchez has not pled any specific facts and that all allegations regarding discrimination are conclusory. Id. at 11-12.

To state a prima facie case of age discrimination under FEHA, a plaintiff must establish: (1) that he was a member of the protected class (i.e. age 40 to 70); (2) that he suffered an adverse employment action; (3) that at the time he suffered the adverse employment action he was satisfactorily performing his job; and (4) that he was replaced by a substantially younger employee or "discharged under circumstances otherwise giving rise to an inference of discrimination." Schechner v. KPIX–TV, 686 F.3d 1018, 1023 (9th Cir. 2012) (internal quotations omitted).

As to Sanchez's religious discrimination claim, he alleges that he experienced disparate treatment on the basis of his religion. FAC ¶ 163. In analyzing a disparate treatment claim under FEHA, the Court applies the same test used in the Title VII context, the test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Weiss v. Permanente Med. Grp., Inc., No. 23-cv-03490-RS, 2023 WL 8420974, at *2 (N.D. Cal. Dec. 4,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

2023) (citing Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000)). To establishe a prima facie case of discrimination under McDonnell Douglas, a plaintiff must show "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000).

Sanchez claims that he was "treated differently than his younger co-workers because of his age (fifty-two) and because of his religious beliefs (Catholic)." Id. ¶ 166. He alleges that his representation was dropped while the representation of "his younger fellow union members, and those who do not share his religious beliefs, were not." Id. ¶ 164.

The Court finds that Sanchez has stated his FEHA claim on both the theory that he was discriminated against due to his age and that he was discriminated against due to his religion. As to age discrimination, Sanchez has pled: (1) that he was fifty-two, and thus a member of a protected class; (2) that he was terminated; (3) that he was satisfactorily performing his job at the time (pleading that the content for which he was terminated had "no effect on his exceptional job performance," FAC at 2); and (4) that he was discharged under circumstances giving rise to an inference of termination because of the differential treatment he alleges he received, FAC ¶ 166. The Court concludes that this suffices to state a prima facie case for a FEHA age discrimination claim.

The Court finds that Sanchez has also sufficiently pled a prima facie case for his religious disparate treatment claim. Sanchez has pled that he is Catholic, that he was qualified to be a flight attendant (and was a flight attendant for nearly 28 years). FAC at 2. Sanchez alleges that he was terminated, an adverse employment action, and that other employees who were younger and/or not Catholic received better treatment because the Union took their claims to arbitration. Id. ¶ 164. The Court finds that this is sufficient to allege his prima facie case.

Accordingly, the Court finds that Sanchez has sufficiently alleged his FEHA claim against the Union both on the grounds of age discrimination and on disparate treatment due to his religion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               'O'

| Case No. | 2:25-cv-00489-CAS-JPRx | Date | June 30, 2025 |
|---|---|---|---|
| Title | Ruben Sanchez v. United Airlines, Inc. et al | | |

### V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** the Union's motion to dismiss.

IT IS SO ORDERED.

|  | 00 : 13 |
|---|---|
| Initials of Preparer | CMJ |